WILLIAMS, J.
11 The defendant, Richard D. Dickson, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64, and jumping bail, a violation of LSA-R.S. 14:110.1. He pled guilty to the lesser included offense of aggravated burglary, in violation of LSA-R.S. 14:60. In exchange, the state agreed to dismiss the jumping bail charge, as well as other unrelated charges (two counts of second degree battery, in violation of LSA-R.S. 14:34.1; and simple criminal damage to property, a violation of LSA-R.S. 14:56). The defendant was sentenced to serve 15 years in prison at hard labor. For the following reasons, we affirm.
FACTS
On June 17, 2008, the Ouachita Parish Sheriffs Office responded to a call that an armed robbery had been committed at a residence on Stubbs Vinson Road in Monroe, Louisiana. The victim, David Glover, told the deputies that a black male had knocked on his door at approximately 11:00 p.m. When he opened the door, the man pointed a gun at his head, forced his way inside and ordered him to get on the floor. Several other men entered and began ransacking the house. The men smashed Glover’s gun case and stole numerous guns. They also stole other items, including jewelry, a television, a laptop computer, video games and various small electronic items. They fled in Glover’s Ford F-350 pickup truck.
Police officers arrived on the scene and discovered a television, later identified as belonging to Glover, lying in the middle of the roadway, a short distance from Glover’s house. While processing the television, an officer observed a white Dodge Neon, occupied by at least four black males, |2passing the scene; all of the occupants avoided looking in the officer’s direction. The vehicle was later found abandoned in a nearby subdivision; the crime unit found a laptop computer, two DVD players and multiple guns that had been stolen from Glover’s residence inside the vehicle.[1] Also found inside the vehicle was a traffic citation that had been issued to the defendant. Glover’s pickup truck was found abandoned near a wooded area with many of the items from the robbery still inside.
Thereafter, the officers discovered that the Dodge Neon was owned by Krystal Crowe, the defendant’s girlfriend. The officers located Crowe at her apartment attempting to report her vehicle stolen. However, Crowe later admitted to police officers that the defendant had instructed her to report the vehicle stolen and she complied because she was afraid of him. *1195 Crowe informed the officers that the defendant was driving her car on the night of the armed robbery.
On September 6, 2008, Sterling Singleton was charged with the March 18, 2008 armed robbery of Glover’s son. Singleton told the investigating officers that he, Kenneth Galloway, Titus Gibson and Xavier John-Lewis had robbed Glover’s son.[2] According to Singleton, they told the defendant about the prior robbery and they all thought that Glover’s house would be “a perfect target.” The group formulated a plan to commit the armed robbery of Glover in the instant matter. Singleton also stated that the group drove to Glover’s house in the defendant’s car, and the defendant told |sthem to “go to the door and tell the victim that he was returning a video game that he had borrowed from his son.” According to Singleton, he initially approached the door, but no one answered. At that point, he wanted to leave; however, the defendant told the group that they were going to “stay there until someone came home.” Subsequently, the defendant approached the door and “rang the doorbell three times and on the third ring a light came on in the house.” Singleton further stated that when Glover opened the door, the defendant “grabbed him and forced him onto the wall.”
A warrant for the defendant’s arrest was issued on January 12, 2009; however, the defendant eluded capture until May 4, 2010, when he was discovered in Ouachita Parish on a Greyhound bus en route to New York.[3]
Subsequently, the defendant was charged by bill of information with the armed robbery of David Glover; the bill was later amended to include a charge of jumping bail in an unrelated matter. On October 25, 2011, the defendant pled guilty to aggravated burglary.
A sentencing hearing was held on April 5, 2012, during which Glover, the defendant and the defendant’s mother testified. Glover testified that he had built his home for his retirement; however, he was forced to move because he did not feel safe anymore. He also testified that he no longer felt safe leaving his wife home alone at night while he worked; therefore, he suffered a significant loss of income.
The defendant’s mother, Cassandra Shelling, also testified. She presented seven letters from family members and friends asking for |4leniency. Ms.. Shelling stated that the defendant was diagnosed and treated for Attention Deficit Hyperactivity Disorder (“ADHD”) since he was in third grade. She testified that he was placed on .Ritalin, and later Concerta, and was classified as a “504 student” in the school system.[4] Ms. Shelling also testified that she was terminated from her position as a teacher after she challenged the school for failing to implement the defendant’s student plan; her firing and subsequent tenure hearing was highly publicized. She stated that the defendant’s conduct began to change because he felt that her termination was his fault. She further testified that the defendant’s girlfriend (Crowe) became pregnant when he was 15 years old; over the next few years, the defendant and Crowe had three sons. Ms. Shelling stated that the defendant’s problems were the result of his impulsive *1196 ness and hyperactivity. She also testified that much of the defendant’s rebellious conduct was a result of being teased by his peers for being on medication and for being classified as a 504 student. Further, she stated that one form of rebellion employed by the defendant was the refusal to take his medication. Ms. Shelling admitted that the defendant had a juvenile criminal record and had been housed at a juvenile detention center. However, she stated, “[H]is juvenile record was mostly just being an incorrigible youth with me[.]” She explained that the defendant would disobey her rules with regard to his curfew, not having other children at the house when she was not home and “hanging with the wrong group.” 1 ¿Additionally, Ms. Shelling expressed her belief that the defendant should receive a lenient sentence because the defendant has changed since his incarceration, has “owned up to” his role in the robbery and has expressed remorse. She described the defendant as a “brilliant kid” who had maintained a 3.8 grade-point average. She stated that he had “just been on the wrong track[.]”
The defendant also testified at the hearing. He stated that he would take back the “wrong choices” he had made if he could. However, the defendant denied actually robbing Glover. He testified, “[T]hey called me after the fact and that’s when I came[.]” The defendant also stated:
I don’t know what I was thinking. Greed. I was thinking about money. It wasn’t about noting [sic] but just money, you know. It’s just a struggle. I was— my family was struggling. I was struggling and it was just—
⅜ * *
Money wasn’t right. Children needed Pampers, food, you know, the rent, everything else. You know, it took a toll on me and I didn’t see no other way. Drugs, I’m not selling drugs. I don’t know.
With regard to his juvenile record, the defendant expressed love for his mother, but stated that his mother was unable to raise him because she “didn’t know the steps in life to go on about raising a man.” He also testified that he felt that he had little in common with his mother and sisters because he was the only male in the house. The defendant also testified that he received counseling while he lived in Massachusetts, and that he had been prescribed medication for his ADHD; however, he never had the prescription filled. He testified that he had not taken any medication in “years.”
|f)On cross-examination, the defendant denied being in Glover’s house and denied participating in the robbery. He stated that he knew one of the men who committed the robbery and that he agreed to pick the others up and take them to sell the stolen items. The defendant stated that he did not know the men had committed a robbery; he “just know they stole a whole bunch of stuff.” He stated that the other participants in the robbery lied when they told police that he “masterminded” the robbery.[5] He also stated that he left the state after that night and did not discover that a warrant had been issued for his arrest “until like the middle of 2009.”
The trial court did not sentence the defendant at the conclusion of the April sentencing hearing. Rather, the court conducted another sentencing hearing on July 11, 2012. At that time, the court noted that during the original sentencing hearing, the defendant denied participating in the robbery. Therefore, the court ordered that the other robbery participants — Galloway, Gibson, John-Lewis and Singleton— *1197 be brought before the court to testify with regard to the defendant’s involvement in the crime.
Galloway testified that he, John-Lewis, Singleton and Gibson committed the robbery, and the defendant arrived in the car to drive them away. Galloway stated that they left Glover’s truck in the woods and did not have any of the stolen items with them when the defendant arrived.
John-Lewis corroborated Galloway’s testimony that he, Galloway, Gibson and Singleton committed the robbery. However, he testified that the |7defendant was not involved in the plan to commit the robbery. According to John-Lewis, after the robbery, Gibson called the defendant to transport the stolen items. The defendant arrived at the residence of John-Lewis’ aunt and the men loaded the items into the trunk of the defendant’s car. He testified that he could not recall whose idea it was to rob Glover. After the court advised John-Lewis that he could face an additional 10 years in prison for committing perjury, John-Lewis testified that he could not recall his testimony at his guilty plea hearing. However, he stated that if his previous testimony was any different from his current testimony, then his previous testimony was a lie.
Singleton testified that he, Galloway, Gibson and John-Lewis committed the robbery. He stated that he had seen the defendant before, but he did not know him. Singleton testified that the defendant became involved after the robbery had been committed. He stated that “one of the other guys” telephoned the defendant, who met them at a different location (he was unable to recall the exact location). Singleton also stated that he could not recall telling police officers that the defendant was involved in the robbery-. When questioned by the trial court about his statement to the police officers, Singleton replied that he could not recall what he told the officers. He maintained his testimony that the defendant was not with him and the others when they robbed Glover. The trial court advised Singleton of the penalty for perjury, and the prosecutor read into the record Singleton’s entire statement to police officers. Nevertheless, Singleton stated that he did not recall his statements to the officers. After answering |sother questions, Singleton refused to answer further, stating, “[I]f it’s okay with you, I wouldn’t — I would like to go back to the jail[.]”
Gibson testified that he, the defendant, Galloway, John-Lewis and Singleton were all involved in the robbery. He stated that all five of them went to Glover’s home and robbed him. The remainder of Gibson’s testimony was conflicting and incoherent.[6] Gibson became belligerent and went on a tirade. He directed profanity towards the judge and the attorneys. He was held in contempt and removed from the courtroom.
At the conclusion of the hearing,, the court sentenced the defendant to serve 15 years in prison at hard labor. The court denied the defendant’s motion to reconsider sentence.
The defendant appeals his sentence.
DISCUSSION
The defendant contends the sentence imposed is excessive in light of his degree of involvement in the robbery. He argues that he was merely an accessory to the robbery and his only involvement included serving- as the driver and assisting *1198 the actual robbers in pawning the stolen goods. He also argues that he was 20 years old when the robbery was committed and that the court failed to consider the fact that he has suffered from ADHD since childhood.
At the time this crime was committed, LSA-R.S. 14:60 provided:
1 ¡¡Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; thus, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,-515 (La.App.2d Cir.9/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.3/9/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in LSA-C.Cr.P. art. 894.1, and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/2/11), 77 So.3d 1052. Where the defendant’s motion to reconsider sentence alleges mere excessiveness of sentence, the reviewing court is limited to considering whether the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Boyd, 46,-321 (La.App.2d Cir.9/21/11), 72 So.3d 952.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/2/11), 77 So.3d 1047.
A review of the factors set forth in LSA-C.Cr.P. art. 894.1 does not require a listing of every aggravating or mitigating circumstance; the trial court must only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/2/11), 77 So.3d 477. Although the defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App.2d Cir.9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App.2d Cir.9/21/11), 74 So.3d 248, writ denied, 2011-2348 (La.4/27/12), 86 So.3d 625. All convictions, criminal activity and other evidence normally excluded from the trial may be considered. State v. Platt, 43,708 (La.App.2d *1199 Cir.12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305. A defendant’s degree of remorse is also a proper sentencing In consideration. State v. Birch, 43,119 (La.App.2d Cir.3/19/08), 979 So.2d 643; State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Shipp, 30,562 (La.App.2d Cir.4/8/98), 712 So.2d 230, 237, writ denied, 98-1199 (La.9/25/99), 724 So.2d 775.
In selecting an appropriate sentence, a sentencing court is not limited to considering only a defendant’s prior convictions, but it may properly review all prior criminal activity. State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.2/13/09), 999 So.2d 1145; State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272; The sources of information- relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay, arrests and conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Doyle, 43,438 (La.App.2d Cir.8/13/08), 989 So.2d 864.
Absent a defendant’s assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant’s criminal history, even when the dismissal forms a part of the plea agreement. State v. Pamilton, supra, citing State v. Cook, 466 So.2d 40 (La.App. 2d Cir.1985); State v. Daley, 459 So.2d 66 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1264 (La.1985).
haIn the instant case, over the defendant’s objection, the trial court read most of the PSI report into the record, including the defendant’s juvenile criminal history. The defendant’s adult criminal history was as follows:
July 2005 — the defendant was arrested and charged with driving without a driver’s license, no insurance, driving without lights, improper license tags and failure to register a vehicle. The charges were later dropped.
September 2005 — the defendant was arrested for unauthorized use of a movable and no driver’s license. These charges were also dropped.
October 2005 — the defendant was charged with damage to property and aggravated assault with a weapon after his sister called police and reported that he had attempted to force her off the telephone by holding a large knife to her neck; she also reported that the defendant had destroyed a' cordless phone. The defendant’s mother reported that he was a danger to her and the other children in the home and asked that charges be brought against him. The charges were later dropped.
February 2006 — the defendant was charged with simple battery of a police officer, resisting an officer and criminal mischief. Police were called to a local high school; the principal reported that he suspected several students of possessing marijuana. The defendant, who smelled of marijuana, refused the police officer’s directive to hand over a forbidden radio; the defendant then “bumped” the officer in the chest. The charges were later dismissed.
April 2006 — the defendant was charged with simple battery; no disposition could be found on this- charge.
May 2006 — the defendant was charged with illegal use of weapons and dangerous instrumentalities after witnesses identified him as the assailant who shot Kenneth Smith in the leg as Smith stood with friends at a bus stop. The defen *1200 dant admitted that he shot at a group of boys who had been “talking noise” to him. The defendant pled guilty to aggravated battery and was sentenced to serve 18 months in jail and to pay a $1,000 fíne, plus court costs.
| i3August 2007 — the defendant was charged with simple criminal damage to property and second degree battery after his girlfriend, who was 10 weeks pregnant, reported that he had kicked her and punched her in the eye.
The trial court also reviewed the defendant’s personal and educational history. The defendant is the father of four children (three with Crowe and another with a woman in Massachusetts). The defendant dropped out of high school in the 10th grade allegedly because he experienced difficulty concentrating. The court also noted that the defendant admitted that he had been suspended from school numerous times for fighting and other issues. Between the ages of 12 and 17, he lived either with his mother, or at a detention center when he became ungovernable. The defendant admitted that he began smoking marijuana at the age of 12. The defendant’s employment history included working at local markets and in his grandmother’s daycare center. When he was 19 years old, the defendant moved to Massachusetts to live with his paternal grandmother and to get to know his father. The defendant stated that he and his father did various things together, including lifting weights, partying and smoking marijuana. While in Massachusetts, the defendant worked at a furniture store and did landscaping. The defendant returned to Louisiana in April 2010 and was arrested on the instant charges.
At the sentencing hearing, the defendant disputed some of the criminal history contained in the PSI report. He denied that he had pulled a knife on his sister and that he had shot Kenneth Smith. Further, the defendant denied the notation that he and his father smoked marijuana together. According to the defendant, his father does not smoke marijuana; |uhe smokes crack cocaine. Additionally, the defendant denied hitting his girlfriend; he admitted that he “put his hands on her,” but he did not hit her.
The trial court also read the factual basis for the defendant’s guilty plea into the record and a statement from the defendant, in which he apologized for his actions and stated that he wanted to go to college. Additionally, the court read the victim’s statement, in which he stated that he believed the defendant should receive the maximum sentence.
The trial court noted the defendant had benefitted substantially by the state’s agreement to allow him to plead to a lesser charge and by the state’s agreement to forego the filing of a multiple offender bill against him. Noting the guidelines set forth in Art. 894.1, the court stated that the defendant committed a crime of violence, had used a firearm and had created a risk of death to the victim. The court found that the defendant will likely repeat his criminal activity. Further, the court noted the defendant’s continuous refusal to take his medication.
Thereafter, the court took note of the defendant’s criminal history; his PSI indicated that the defendant had been on a continuous path of violence and destruction, without showing regard for others. With only one exception, the defendant received only probation as a consequence of his prior crimes. The court further noted the defendant’s claim that if granted probation, he would begin taking his medication, seek further education and make a positive change in his life. The court stated that years of leniency by dismissing charges and granting him probation had *1201 done nothing to sway the defendant from a life of crime and violence.
11sThe court also found that although imprisonment may be a financial hardship, the defendant does not pay child support for any of his four children. The court found that there is an undue risk that the defendant would commit another crime, that the defendant is in need of correctional treatment and that any lesser sentence would deprecate the seriousness of the offense.
The court next considered the defendant’s denial that he was present and involved in the robbery, in light of the statements and testimony of the others who were involved. The judge expressly stated that he believed the statements the men made to police, in which they informed the officers that the defendant was involved in the robbery and that he was the “mastermind” of the crime. The judge made it clear that he did not believe the co-perpetrators’ testimony at the sentencing hearing. The court again noted the psychological and economic impact the robbery had on the victim and his family.
As stated above, the sentencing range for aggravated burglary is one to 30 years. The sentence imposed, 15 years, is well within this range. The trial court reviewed the guidelines set forth in LSA-C.Cr.P. art. 894.1, and noted the defendant’s personal and educational background, limited work history and extensive criminal history.
As the trial court noted, the sentencing exposure for armed robbery was a maximum of 99 years without benefits; therefore, the defendant received a substantial benefit by pleading guilty to the reduced charge of 11f,aggravated battery, for which he faced a maximum of 30 years in prison. The imposed sentence of . 15 years is only half the maximum allowed.
The defendant and his cohorts invaded the victim’s home at night and held him at gunpoint while they stole his possessions and his truck. Although some of the possessions were recovered, the trauma of the event has driven the victim and his family from their retirement home, caused significant changes in their finances, and left the victim fearful of another attack. In light of the damage the defendant created by his offense, the substantial benefit he received in pleading guilty, and his extensive criminal history, the sentence imposed is not so grossly disproportionate to the severity of the crime that it shocks the sense of justice, nor does this sentence appear to be the needless infliction of pain and suffering. Thus, we find no abuse of the trial court’s discretion. Consequently, the defendant’s sentence is not constitutionally excessive.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Glover testified that all of his possessions were recovered with the exception of a 9 mm Smith & Wesson handgun.

. The co-perpetrators, Galloway, Gibson and John-Lewis are cousins.

. Some time after the robbery, the defendant left town and had been living with his paternal grandmother in Springfield, Massachusetts.

.Section 504 is a section of the Rehabilitation Act of 1973, which prohibits discrimination against individuals with physical or mental disabilities who attend public or private schools funded with public dollars.

. The four co-participants pled guilty to attempted armed robbery and were sentenced to 15 years in prison in exchange for their agreement to testify against the defendant.

. Gibson was unable to recall details about the night of the robbery. At some point, he stated, "[I]t’s been twelve years already since I got sentenced, so I mean it's been October of 2009. I know I did twelve years, so it's got to be 2021. If today is 2012 then that mean[s] I got locked up in 2000.”