CALLOWAY, J., Pro Tempore;
It The 'defendant, James Anthony Bell, was convicted by a jury of 10 counts of indecent behavior with juveniles, in violation of La. R.S. 14:81(A)(1). He was subsequently sentenced to seven years at hard labor and a $5,000.00 fíne on each count. The trial court ordered the sentences for counts 1, 3, 6, 7, 9, and 10 to run consecutively, and the sentences for 2, 4, 5 and 8 to run concurrently. The defendant’s sentences totaled 42 years. A motion to reconsider sentence was filed and denied. The defendant appeals his convictions and sentences. For the reasons set forth in this opinion, we affirm.
FACTS AND PROCEDURAL HISTORY
The defendant was originally charged by bill of information with four counts of molestation of a juvenile and three counts of indecent behavior with juveniles involving his girlfriend’s daughter, A.C., and her niece, L.W. After several amended bills of information, the defendant was ultimately charged with 10 counts of indecent behavior with juveniles involving A.C. and L.W.
The following , evidence was adduced at trial, which commenced on May 20, 2014.
The defendant was involved in a romantic relationship with the mother of A.C. and J.C. for approximately 12 years prior to the instant charges. Although the couple did not reside together, he did visit her home frequently, and would often stay overnight. The mother of A.C. and J.C. testified that she trusted the defendant with her children. -In fact, at times, the defendant was left at home alone with the children.
1 gCounts one through nine charged the defendant with abuse concerning A.C., who was nine years old when the abuse began. A.C. was 17 years old when she reported the abuse to her mother in April 2012. Count 10 charged the defendant with abuse concerning L.W.
Deputy Taff Randal Watts testified that his involvement in the investigation began on April 23, 2012. When he spoke with A.C.’s mother on April 25, 2012, she informed him that A.C., who was 17 at that time, stated that the defendant had sexually assaulted her for years. After identifying the defendant’s birth certificate, Watts testified that the defendant was 48 years old at the time of the complaint.
*687 The-Department of- Child and Family Services (“DCFS”) was notified, and A.C. and her younger sister, J.C., were interviewed at the Pine Hills Advocacy Center. Watts, who was present for the interview, authenticated the video recordings, which were introduced into evidence and, played for the jury.
During A.C.’s interview, she spoke of incidents beginning when she' was nine years old, where the defendant would either come into her bedroom, or take her out of her bedroom, and touch her breasts and vagina outside of her clothes. .These incidents became progressively worse, and continued until A.C. was 16 years old.
A.C. stated that the last incident - occurred in April 2012. The defendant went into her room while she was on the phone with her friend, Kendrick Armstrong. A.C. stated that she put her phone under her pillow and the defendant molested her. After the defendant left her room, A.C. lainformed Armstrong of what had taken place. Armstrong urged her to tell her mother, which she did the following day. Watts verified this incident by talking with Armstrong. A.C. expressed her hesitation to report the abuse because -the defendant told her that if she did tell anyone she would have to go to the Methodist Children’s Home “like the first girl.”
During J.C.’s interview, she stated that she saw the defendant “on A.C.” at least 10 to 20 times in the bedroom that the two sisters shared. J.C. told her mother what she witnessed. When the interviewer asked J.C. to place the dolls in the position that she observed the defendant and A.C. in, she placed the female doll on her back and the male doll with his head between her legs. J.C. also stated that the defendant had touched her legs before, and that it made her’uncomfortable.
After these interviews were played for the jury, L.W.,[1] the second victim and A.C.’s older cousin, testified. L.W., who was 23 years old at the time of trial, testified that she would visit A.C. and J.C.’s home several times a week, sleeping either in the spare bedroom or on the couch. She described five incidents of abuse, beginning in 2006, when she was 15 or 16 years old. The first incident occurred during Easter 2006, when the defendant sat next to L.W. on the couch, placed his hand on her leg, and asked her if she was sexually active with her boyfriend. L.W. told the defendant “no” and he rubbed her thigh with his hands. The second incident occurred when, as L.W. was sleeping in the spare bedroom, the defendant came into the room, woke her up and asked her if she wanted Lanything. She testified that she responded “do what,” and the defendant proceeded to touch her breasts and vagina outside of her clothes. The third incident occurred when the defendant entered the bathroom while she was taking a bath. She immediately wrapped a towel around herself, but the defendant began to touch her while exposing himself to her. The defendant unsuccessfully attempted to make- her touch his penis. The fourth incident also occurred while L.W. was bathing. She was unable to wrap a towel around herself, and the defendant touched her vagina, but did not penetrate it. The final incident occurred while L.W. was sitting on the couch. A.C. and J.C.’s mother was cooking dinner, and the other kids were outside playing. L.W. testified that the defendant sat down next to her and attempted to “feel on her.” She told him to stop, and threatened to tell her mother if he continued the abuse. The defendant then got up and left the room. After the abuse eom- *688 mencod, L.W. stopped spending the night at A,G. and J.C.’s house.
L.W. also testified that she had a conversation with A.C. regarding the defendant sexually abusing A.C. L.W. told A.C. that if the defendant abused A.C. again, they would tell A,C.’s mother. L.W. did not inform A.C., or anyone else, that the defendant was also sexually abusing her.
A-.C., who was 19 years old at the timo of trial, testified that the defendant began sexually abusing her in 2004. The first incident occurred when the defendant came into her and her sister’s room one night and took her into the hallway while her mother was in the bathtub. A.C. testified that the defendant “began to kiss my breasts, my neck and on my vagina with my | r,clothes on.” A.C. was only nine years old. A.C. expressed her fear, stating that the defendant told her that “if I told anyone, I would go to jail-to the children’s home like the other little girl.”
A.C. testified that the defendant continued to sexually abuse her two to three times per week while her mother was away from the home, or in the bathtub. Her mother questioned her about the defendant’s actions, but A.C. stated that she denied the allegations because she was afraid. She also stated that she knew her mother loved the defendant, and that she “didn’t want to hurt her.” A.C. also testified that the defendant would give .her $20.00 when he inappropriately touched or sexually abused her. A.C. also admitted that she talked to L.W. about the defendant’s abuse.
J.C., who was 14 years old at the time of trial, testified that she saw “something happen” between A.C. and the defendant. J.C. saw the defendant with his head between A.C.’s legs at least 10 times in the bedroom she shared with A.C. She testified that A.C. would be crying when the abuse occurred. She also observed the defendant come into their bedroom and take A.C. out of the room. J.C. told her mother three times about what she saw take place between A.C. and the defendant. J.C. also testified that the defendant came in her bedroom and touched her upper thigh. She was afraid and told her mother what had occurred.
The mother of A.C. and J.C., whose relationship with the defendant ended when she became aware of the abuse, testified that when A.C. was nine or 10, J.C. told her that the defendant was getting A.C, out of bed at night and taking her to the couch. She subsequently questioned A.C. andjjjthe defendant about the allegations, and both of them denied that anything occurred. She witnessed the defendant giving A.C. money, but A.C. and the defendant denied any reason for the money being given. On April 21, 2012, A.C. told her about the sexual abuse that had taken place. She immediately took A.C. to the sheriffs office, and then to the hospital. No physical examination or rape kit was performed due to the length of the abuse and the fact that no sexual intercourse had occurred.
The jury found the defendant guilty as charged on all counts of indecent behavior with a juvenile. He was sentenced to serve seven years at hard labor and a $5,000.00 fine for each count. The trial court ordered the sentences for counts 1, 3, 6, 7, 9 and 10 to run consecutively, and the sentences for counts 2, 4, 5, and 8 to run concurrently.
Counsel for the defendant filed a motion to reconsider the sentence, which the trial court denied. The defendant now appeals.
LAW AND DISCUSSION

Insufficiency of Evidence

In his first assignment of error, the defendant argues that the evidence pre *689 sented was insufficient to support his convictions. More specifically, he argues that there are inconsistencies in the victims’ testimonies, as well as discrepancies between the information each victim provided to the forensic interviewer and their testimonies at trial.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence, The reason for reviewing ^sufficiency first is,that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 80 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v, Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hear old, 603 So.2d 731 (La.1992); State v. Bosley, 29,258 (La.App,2d Cir.4/2/97), 691 So.2d 847, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1383.
Under the Jackson v. Virginia standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable' doubt. Jackson v. Virginia, supra; State v. Bosley, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004), This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that'of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
This court’s authority to review questions of fact in a criminal case is limited to the sufflciency-of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020; State v. Williams, 448 So.2d 753 (La.App. 2d. Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the' prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred frote the circumstances established by that ’evidence must be sufficient for a rational -trier of fact to conclude-beyond- a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La. App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a. determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d *690 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
bThe appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, supra. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27,959 (La. App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal, contra-, diction or irreconcilable conflict with physical evidence, one witnesses testimony, -if believed by. the trier of fact, is sufficient support for a .requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. Likewise, the sole testimony of a sexual assault victim is sufficient to -support a requisite factual finding. State v. Demery, ‘49,732 (La.App.2d Cir.5/20/15), 165 So.3d 1175, citing State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69. Such testimony alone is sufficient even where the state does not introduce inmedical, scientificor physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678.
Thus, in order for the defendant’s conviction to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the essential elements of indecent behavior with juveniles. La. R.S. 14:81(A)(1), indecent behavior with juveniles, states:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense.
Therefore, the state must prove beyond, a reasonable doubt that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age . of 17; (2) was over the age of 17 and more than two years older than the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. State v. Cooper, 45,320 (La.. App.2d Cir.6/30/10), 42 So.3d 460, writ denied, 2010-1821 (La.2/11/11), 56 So.3d 998.
As stated in the facts section above, A.C., who was 19 years old at the time of trial, testified that the defendant began sexually abusing her in 2004, when she was only nine years old. The first incident occurred when the defendant came into her and her sister’s room one night and took her into the hallway while her mother was in the bathtub. A.C. testified that the Indefendant “began to kiss my breasts, my neck and on my vagina with my clothes *691 on.” A.C. testified that the defendant continued to sexually abuse her two to three times per week while her mother was away from the home, or in the bathtub, for years. When she was 14 years old, the defendant came into the bathroom while she was bathing. He touched her breasts and vagina and kissed her neck. The defendant also penetrated her vagina with his fingers. A.C. testified that, after this, incident, the defendant would either come into her bathroom or bedroom to abuse her. If he came into the bedroom, the defendant would pull her clothes down and kiss her vagina. ■ ■
. L.W. testified regarding five- incidents where the defendant .abused' her, beginning around Easter. 2006, when she was 15 or 16 years old. As we previously stated, the first incident occurred when the defendant sat next to L.W. on the couch, placed his hand on her leg, .and asked her if she was sexually active with her boyfriend. L.W. told the defendant “no” and he rubbed her thigh with his hands. The second incident occurred when, as L.W. was sleeping in the spare bedroom, the defendant came into the room, woke her up and asked her if she wanted anything. She testified that' she responded “do what,” and the defendant proceeded to touch her breasts and vagina outside of her clothes. The third incident occurred when the defendant entered the bathroom while she was taking a bath. L.W. immediately wrapped a towel around herself, but the defendant began to touch her while exposing himself to her. The fourth incident also occurred while L.W. was bathing. She was unable to wrap a towel around herself, and the defendant touched her vagina, but did not penetrate it. The final 112incident occurred while L.W. was sitting on the couch. A.C. and J.C.’s mother was cooking dinner, and the other kids were outside playing. L.W. testified that the defendant sat down next to her and attempted to “feel on her.”'
When viewed in the light most favorable to the prosecution; we find sufficient evidence present for a reasonable jury to convict the defendant of indecent behavior with a juvenile. The age element regarding the offense is not in dispute. The testimony of A.C. and L.W., which'the jury found credible, more than sufficiently established that thé defendant committed lewd acts upon Á.C. and L.W. The defendant’s vile actions, which were graphically described by the victims, establish that the defendant gratified his sexual desires by touching the girls inappropriately. Therefore, this assignment of error is lacks merit. •

Other Crimes Evidence

In his; second assignment of error, the defendant argues that the trial court erred in allowing the testimony of S.J. as other crimes evidence under La. C.E. art. 412.2. More specifically, he argues that S.J.’s testimony does not show'a lustful disposition toward children, and that S.J. voluntarily began a relationship with him. The defendant contends that the prejudicial effect of her testimony outweighed its probative value, and the limiting instruction was insufficient to blunt the prejudicial effect.
La. C.E. art. 412.2, evidence of similar crimes, wrongs, or acts in sex offense cases, provides:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts-that constitute a sex offense 1 ^involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may-be considered for its bearing on *692 any matter to .which it is relevant subject to the balancing test provided in Article 408.
B. Ip a case in’which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
In determining whether such evidence will be admitted at trial, La C.E. art. 403 state's: ,•
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue, delay, or waste of time.
Evidence of other crimes may be admissible if the state is able -to demonstrate that the other crimes evidence is independently relevant under a, statutory or judicially recognized exception to the general exclusionary rule of La. C.E. art, 404(B). State v. Maine, 00-1158 (La.1/15/02), 805 So.2d 1141, citing State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916; State v. Smith, 35,699 (La.App.2d Cir.4/5/02), 815 So.2d 412.
Generally, a trial court’s ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v, Preston, 47,273 (La.App.2d Cir.8/8/12), 103 So.3d 525, citing State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). This same standard is h applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. Id., citing State v. Wright, 2011-0141 (La.12/6/11), 79 So.3d 309 and State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675. See also State v. Cotton, 42,509 (La.App.2d Cir.9/19/07), 965 So.2d 1016, writ denied, 2007-2070 (La.3/7/08), 977 So.2d 898. The erroneous admission of other crimes evidence of a sexual offense is subject to harmless error. State v. Preston, supra.
For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by .the defendant, (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404(B)(1), i.e., motive, intent, knowledge, identity, absence of mistake or accident, and (3) show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993).
Prior to trial, the state filed a notice of intent to use evidence pursuant to La. C.E. art. 412.2, and two amending and supplemental notices. The state’sought to use the testimony of -S.J., who would testify that when she was 15 or 16 years old'and prior to the abuse alleged in this matter, the defendant made sexual advances toward her, bought her clothes, and gave her money. The two had consensual sex on several occasions. S.J. would also testify that the defendant forced her to have sex with him on several occasions. The last time the defendant raped S.J., she reported the crime, and the defendant was charged with forcible rape. The defendant entered a hnguilty plea to the reduced charge of cruelty to a juvenile and was sentenced to one year in parish jail with credit for time served.' . .
• An objection was raised at trial, and after the jury was excused, arguments were made on the admission of this evidence. The trial court ruled S.J.’s testimony admissible, after finding that the testimony would establish a lustful disposition toward children, and that the defen *693 dant’s alleged actions were similar to those alleged by A.C. and L.W. This, evidence was allowed subject ;to a limiting instruction to the jury: .. ...
Evidence that- the defendant was involved -in the commission of an offense other than the offense for which he is. on trial is to be considered only for a limited purpose. The .sole purpose for which such evidence may be considered is whether it tends to show that defendant had the lustful disposition to commit the crime charged, You may not find -him guilty for these offenses merely because he may have committed another offense.
We find no abuse .in the trial court’s discretion pursuant to La. C.E, art. 412.2 in admitting this evidence. SJ.’s. testimony concerning the - defendant’s sexual abuse toward her was similar to the sexual abuse he subjected A.C. and L.W. to, S.J., A.C., and L.W. were all under the age of 17, and he made similar advances on each of them. The evidence was properly admitted, and the jury was properly instructed not to convict the defendant solely because of the commission of other offenses. Therefore, this assignment of error is without merit.

Excessive Sentence/Motion for Reconsideration of Sentence

Finally, the defendant argues that the trial court erred in imposing constitutionally excessive sentences, and in denying his motion to reconsider his sentences,
1 mThe test for reviewing an excessive sentence claim is two-pronged. First, the record must show that the trial court took cognizance of the criteria , set forth in La, C. Cr. P. art, 894,1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Or. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered include the defendant’s personal history - (age, family ties, marital status, .health, employment record), prior criminal-record, seriousness of the offense, and the likelihood of rehabilitation. State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, unit denied, 2004-2606 (La.6/24/05), - 904 So.2d 728. Where the record clearly shows an adequate factual basis for the senténce imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaher, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. I, § 20 if it is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State to. Dorthey, 623. So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in, light, of the harm done to. society, it shocks the sense of justice. State v, Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
The trial court has wide discretion in imposing sentence within- minimum and maximum limits allowed by the statute; thus, a sentence will -not be set aside as excessive unless the defendant *694 shows the trial court abused its discretion. State v. Dickson, 48,361 (La.App.2d Cir.9/25/13), 124 So.3d 1193; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La. App.2d Cir.10/24/07), 968 So.2d 875.
On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial coprt abused its discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29. Absent a showing of manifest abuse of discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. App.2d Cir.5/12/04), 873 So.2d 939. Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks, the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/2/11), 77 So.3d 1047.
Whoever commits the crime of indecent behavior with juveniles on a victim under the age of 13 when the offender is 17 years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than 25 years. At least two years of the sentence imposed shall- be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:81(H)(2).
After a careful review of the record, we find that even though the trial court imposed the maximum sentence on all counts, it was not an abuse of discretion. The trial court reviewed the presentence investigation report and adequately considered all of the aggravating and mitigating factors when tailoring its sentences for the defendant. The trial court recognized the defendant, who was 50 years old at the time of trial, as a fourth felony offender with “long history of similar type activity.” Pursuant to La. C. Cr. P. art. 894.1, the trial court found in part:
There is an undue risk that during the period of a suspended sentence or probation this defendant will commit another crime... Second, the court finds the defendant is in need of correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution. The Court further finds that a lesser sentence than the one that will be meted out would deprecate the seriousness of the defendant’s crime. Court finds further that the offender’s conduct during the commission of the offense manifested deliberate cruelty to the victims. Offender knew and should have known that the victims of the offenses were particularly vulnerable or incapable of resistence due to extreme youth.
haThese sentences, when viewed in light of the harm done to these victims and society as a whole, do not shock the sense of justice, nor are they a needless imposition of pain and suffering.. This assignment of error is meritless.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.

. At the time of trial, L.W. was incarcerated for her participation in an armed robbery.