PITMAN, J.
LA nonunanimous jury convicted Defendant Andre Demery- as charged of aggravated rape. The trial court sentenced him to the mandatory term of life imprisonment. Defendant appeals, arguing that the evidence was insufficient to convict him. For the following reasons, we affirm Defendant’s conviction and sentence.

FACTS

On January 28, 2013, the state filed a bill of indictment charging Defendant with one count of aggravated rape in violation of La. R.S. 14:42(A)(4), stating that on or about or between the dates of October 1, 2012, and November 29, 2012, Defendant committed the aggravated rape of a juvenile, C.S.,[1] whose date of birth is June 4, 2000, and who was under the age of 13 at the time of the alleged offense, by having anal, oral or vaginal intercourse. On February 4, 2013, Defendant pled not guilty. A jury trial began on April 28, 2014.
Lisa Toland, the principal of Central Elementary, and Mary Cone, the school’s counselor, both testified about events that occurred at school on November-29, 2012. Ms. Toland testified that a teacher informed her that students were saying that C.S. was pregnant. Ms. Toland and Ms. Cone stated that they met with C.S. to discuss the rumor. Ms. Toland testified that C.S. admitted that she had been having sex, that she told some of her friends she thought she was pregnant and that the father could be a boy from Gibsland. Ms. Toland noted that C.S. stated her mother did not know about |2the situation, but that her father did. Ms. Toland testified that she then contacted C.S.’s mother, Treniece Shehee. She stated that Ms. Shehee came to the school, she explained the circumstances and then C.S. joined them to speak with her mother. Ms. Toland also stated that Ms. Shehee asked C.S. who was the father and:
[C.S.] just kind of put her head down and didn’t say anything. And I think we sat there kind of quiet for a little while and [C.S.] wasn’t saying anything and [C.SJ’s mom again asked who the dad was? And then she said, could it — it is your dad? And that’s when [C.S.] started crying, put her head down, and she said yes.
Ms. Cone stated that C.S. admitted that her father, Defendant, “had done these things to her” and described this revelation as “a big shock.” Ms. Cone stated:
[S]he was very quiet and then when she all of a sudden ... just got really ... she looked down. And her shoulder slumped and she said, yes, it is him, because we just did not expect that.
Ms. Toland testified that she then contacted the sheriffs department.
The Webster Parish Sheriffs Office arranged for C.S. to be interviewed at the Gingerbread House Children’s Advocacy Center. A video of forensic investigator Alex Person’s November 30, 2012, interview with C.S. was shown to the jury.
*1177 In this video, C.S. stated that she is 12 years old and lives with her mother and two younger sisters. She explained that Defendant was released from prison in March or April of that year and that he threatened to take C.S. away from her mother unless her mother agreed to let him spend time with her. C.S. said that, during a visit at Defendant’s house, he took her into his room and “started messing with [her]” and touching her. She ^explained that “messing with” means “trying to have sex.” She said that the first time this happened, she was asleep and woke up to find Defendant on top of her. She said that her .pants were down, as were Defendant’s, and she reported that his “private” was in her “private” and that he was moving. She said that he stopped when someone came to the door and that he told her not to tell anyone.
C.S. also described several incidents when Defendant picked her up in his car, drove to a secluded area and, once parked, told her to get into the backseat. She said that when they were in the back seat, he told her to take her pants off, which she did, and then Defendant put his “private” in her “private.” She said that he never put anything on his “private” and that he tried to “hold it,” an apparent reference to ejaculation. C.S. explained that this conduct in the vehicle happened “every weekend” and that it happened “more than 10 times.” When shown anatomically correct drawings of a man and a girl, C.S. circled the penis on the male drawing and the vagina on the female drawing to explain what she meant by “private area.”
C.S. also testified at trial and stated that Defendant had sex with her at several locations in Webster Parish. She stated that she used a towel in Defendant’s vehicle to clean herself after they had sex. She further testified that the information in the Gingerbread House video interview is all true. On cross-examination, she explained that the acts by Defendant began in March or April 2012, after he was released from prison. She stated that the first time it happened was at Defendant’s home in Gibsland, where he lived with his girlfriend and his other children. C.S. explained that she was in | ¿Defendant’s bedroom and “we were watching a movie. And we were laying down and he was — I woke up. He was on top of me.” She stated that the next day they had sex in Defendant’s car when he was taking her back to her mother’s house. C.S. testified that she did not want to go to Defendant’s house, but that her mother made her because her mother was afraid of losing custody if she did not let Defendant spend time with C.S. She stated that she continued the visits with her father in order to see her cousins in Gibsland. She did not tell her mother or grandmother about what Defendant was doing because she was afraid. She noted that her mother had asked if her father was “messing with” her, but she answered no because she was afraid because Defendant had told her not to tell. She stated that she and Defendant had sex in his vehicle on several occasions. She admitted that she first told her teacher that she may be pregnant by a boy from Gibsland because she was embarrassed and did not want to admit that it was really her father.
Treniece Shehee testified that Defendant is the father of her daughter, C.S. She stated that, on November 29, 2012, she met with Ms. Toland, who informed her that C.S.. thought she was pregnant. Ms. Shehee stated that she thought the father was Defendant, but C.S. thought it was a boy in Arcadia or Gibsland. Ms. Shehee further testified that she asked *1178 C.S. if Defendant had been “messing with” her, and C.S. responded yes. She stated that she was suspicious of Defendant because of occurrences when C.S. visited her father. She noted that Defendant would take C.S. to get something to eat but she would come home having not eaten and that he | Bwould take her to buy clothes, but she would return with no new clothing. She stated that C.S. occasionally stayed the night at Defendant’s house and that, at times, C.S. stated she did not want to go to her father’s house.
Several employees of the Webster Parish Sheriffs Department testified about the investigation. Detective Teresa Rogers testified that they obtained a search warrant and collected evidence from the backseat of Defendant’s vehicle. She explained that a light was used to detect bodily fluids on the seats of the vehicle and that cuttings of the seat material were taken from the areas that tested positive for bodily fluid. Detective Jennifer Ervin testified that she participated in the search and collection of evidence from Defendant’s vehicle. She stated that a black towel was removed from the vehicle’s floorboard and that she took cuttings from the backseat of the vehicle, all of which were taken to the North Louisiana Crime lab for analysis. Detective Barry James testified that he took photographs of Defendant’s vehicle. Deputy Wade Wells testified that he went to the locations where the alleged rapes occurred and confirmed the existence of the locations.
Katherine Traweek, a forensic DNA analyst at the North Louisiana Crime Lab, testified that she analyzed the samples collected by detectives from Defendant’s vehicle. She stated that seminal fluid was present in the cuttings taken from the backseat of the vehicle and that the DNA from that fluid was consistent with Defendant’s DNA profile. She also testified that DNA from skin cells found on the towel taken from Defendant’s vehicle was consistent with C.S.’s DNA profile. She stated that the towel also | (¡contained DNA of a second person and that Defendant could not be excluded as the donor of that DNA, whereas 99.9 percent of the rest of the population could be excluded.
Defendant chose to testify at trial and denied ever having sex with C.S. or touching her in a sexual way. He stated that, when he was released from prison in 2012, he tried to establish a relationship with C.S. and paid child support when he could. He also stated that, when he was first released, C.S. visited with him and his mother; and, beginning in April 2012, she would stay with him and his girlfriend on some weekends. He testified that he did not have a good relationship with Ms. She-hee and that he did not know that C.S. was his child until she was six years old. He stated that, to his knowledge, C.S. did not have any cousins living in Arcadia or Gib-sland. He explained that his girlfriend’s sister’s child lives in the area and is C.S.’s best friend and that C.S. visited him so she could see her friend. He noted that he once took C.S. to buy clothing and bought her shoes, but C.S. kept the shoes at her grandmother’s house because she liked to hide things from her mother. He also stated that there was never an occasion when he told Ms. Shehee that he was taking C.S. out for food but did not feed her. He testified that the black towel was in his vehicle to protect the vehicle’s carpet when he moved over the Thanksgiving holiday in 2012, noting that it was previously used as his bath towel at his home and might have been used by the children.
On cross-examination, Defendant testified about a letter he wrote to the district *1179 attorney in which he stated that nothing about the incident was |7his fault. He denied making a statement that he and C.S. were in bed together when she was naked.[2] Defendant stated that he was aware his girlfriend believed C.S., but did not know that she told C.S. she would have done something about it if C.S. had told her.
On April 30, 2014, the jury — by a vote of 11 to 1 — found Defendant guilty as charged of aggravated rape. On June 9, 2014, the trial court sentenced him to the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
Defendant now appeals.

DISCUSSION

Defendant argues that the state failed to prove beyond a reasonable doubt that he committed the crime of aggravated rape because no rational juror could have found him guilty based on the evidence adduced at trial. He contends that the jury was presented with multiple conflicting accounts of when the alleged rapes occurred. Defendant attacks the credibility of C.S. and contends that the jury’s choice to credit her testimony was not reasonable. He further argues that, during cross-examination, the prosecutor improperly asked him questions about facts that were not in evidence and that the questions tainted the jury’s decision-making process. Defendant also argues that the DNA testing of the materials taken from his vehicle demonstrated an irreconcilable conflict between the victim’s testimony and the physical evidence.
|sThe state argues that a rational jury could conclude that the state proved the elements of aggravated rape beyond a reasonable doubt. It contends that any inconsistencies in C.S.’s statements and testimony do not rise to the- level necessary to undermine the jury’s decision to credit her testimony in establishing the elements of the offense.
The standard of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); State v. Smith, 47,983 (La.App.2d Cir.5/15/13), 116 So.3d 884. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writ denied, 02-2595 (La.3/28/03), 840 So.2d *1180 566, and writ denied, 02-2997 (La.6/27/03), 847 So.2d 1255, and cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004), citing State v. Tolliver, 35,930 (La.App.2d Cir.5/8/02), 818 So.2d 310, and State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991), writ denied, 93-0694 (La.3/30/95), 651 So.2d 857. Likewise, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69. The testimony of one witness is sufficient to prove the elements of an offense even when the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
La. R.S. 14:41 provides, in part:
A.Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
B.Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is Insufficient to complete the crime.
La. R.S. 14:42(A)(4) defines aggravated rape as follows:
A. Aggravated rape is a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
Viewing the evidence in the. light most favorable to the prosecution, the state presented sufficient evidence at trial to convict Defendant of the aggravated rape of C.S. C.S. stated that Defendant put his penis, which she described as his “private,” “in” her vagina, which she described as her “private,” and was “moving” at the time. Her testimony is direct evidence that proves every element of the crime of rape. C.S. was born on June 4, 2000, and these events took place in 2012 when she was 11 to 12 years old, thus making this an aggravated rape pursuant to La. R.S. 14:42(A)(4).
The jury clearly chose to accept C.S.’s testimony as credible. The jury, as the finder of fact, was able to observe C.S.’s demeanor on the video and at trial and presumably accepted her explanation that she initially lied about the identity of the perpetrator because “I didn’t want to tell them that it was my daddy.... Because I was embarrassed.” It was within the dis *1181 cretion of the trier of fact to make such credibility determination, and this court will not disturb this determination on appeal. The sole testimony of C.S. was sufficient to convict Defendant. State v. Watson, supra.
Any discrepancies concerning when the alleged rapes occurred were explained by the witnesses involved. They consistently stated that the In alleged acts of rape began after Defendant was released from prison in 2012.
Defendant’s challenge of the DNA evidence is misplaced. The physical evidence from the backseat of the vehicle did not discredit C.S.’s version of events. In fact, this physical evidence supported her testimony that she and Defendant had sexual intercourse in the backseat of the vehicle and that she used the black towel to clean herself.
The evidence presented at trial was sufficient to sustain the conviction of Defendant. We find, therefore, that this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Andre Demery, are affirmed.
AFFIRMED.

. To protect her privacy, the victim will be referred to by her initials, C.S., pursuant to La. R.S. 46:1844(W).

. Outside the presence of the jury, Defendant’s attorney clarified that this was a reference to something Defendant allegedly told an Arcadia police officer and that both parties had agreed that the statement would not be used for impeachment purposes. The prosecutor agreed that he did not intend to call the officer or introduce the statement, but he stated that, if Defendant "denies it on the stand under oath, then I would be prosecuting him for perjury.”