STONE, J.
The defendant, Roy Leon Robertson, was charged by grand jury indictment with aggravated rape of a person under the age of 12, in violation of La. R.S. 14:42. Following a jury trial, Robertson was found guilty as charged, and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the following reasons, we affirm Robertson's conviction. We vacate Robertson's life sentence and sentence him to 20 years without restriction on parole, probation, or suspension of sentence.
FACTS AND PROCEDURAL HISTORY
On November 17, 2015, a grand jury indicted the defendant, Roy Lee Robertson ("Robertson"), for the aggravated rape of his daughter, T.N.,[1] occurring between February 12, 1972, and February 12, 1976.[2] Robertson waived arraignment and pled not guilty.
During a jury trial, the state presented testimony from T.N. and other victims *1199 whom Robertson molested and raped during their childhood. Robertson did not testify at trial nor did he present any witnesses. After deliberation, the jury unanimously found Robertson guilty as charged. The trial court denied Robertson's motion for post-verdict judgment acquittal, noting that it had listened carefully to the testimony and was satisfied that the evidence was sufficient to prove Robertson was guilty beyond a reasonable doubt of the aggravated rape of T.N. This appeal ensued.
DISCUSSION
Prior to trial, the state filed a notice of intent to use the following evidence of other similar sexual assaults committed by Robertson, pursuant to La. C.E. art. 412.2 :
• Robertson repeatedly raped and molested his juvenile granddaughter, R.S., whose date of birth is XX/XX/XXXX, from the time she was approximately six years old until she was 14 years of age.
• Robertson repeatedly raped and molested his juvenile daughter, D.J., whose date of birth is XX/XX/XXXX, from the time she was approximately six years old until she was 14 years of age.
Robertson contends the evidence, along with T.N.'s testimony, was insufficient to sustain his conviction for aggravated rape of T.N. Robertson argues T.N.'s and D.J.'s testimony lacked credibility because: 1) they did not provide a reasonable explanation for waiting almost 40 years to report the alleged sexual abuse; and, 2) they have mental health issues. When viewed in the light most favorable to the prosecution, this Court finds that the state presented sufficient evidence to prove Robertson committed aggravated rape of T.N.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate, 2001-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Carter, 42,894 (La. App. 2 Cir. 01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086 ; State v. Crossley , 48,149 (La. App. 2 Cir. 06/26/13), 117 So.3d 585, writ denied, 2013-1798 (La. 02/14/14), 132 So.3d 410. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 02/22/06), 922 So.2d 517 ; State v. Dotie, 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/06/09), 21 So.3d 297 ; State v. Crossley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher , 41,981 (La. App. 2 Cir. 05/09/07), 956 So.2d 769 ; State v. Burd , 40,480 (La. App. 2 Cir. 01/27/06), 921 So.2d 219, writ denied , 2006-1083 (La. 11/09/06), 941 So.2d 35. Likewise, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Lewis , 50,546 (La. App. 2 Cir. 05/04/16), 195 So.3d 495, writ denied , 2016-1052 (La. 05/01/17), 219 So.3d 330 ; State v. Demery, 49,732 (La. App. 2 Cir. 05/20/15), 165 So.3d 1175, writ denied, 2015-1072 (La. 10/17/16), 207 So.3d 1067. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.
*1200 State v. Ponsell , 33,543 (La. App. 2 Cir. 08/23/00), 766 So.2d 678, writ denied , 2000-2726 (La. 10/12/01), 799 So.2d 490.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen , 36,180 (La. App. 2 Cir. 09/18/02), 828 So.2d 622, writsdenied , 2002-2595 (La. 03/28/03), 840 So.2d 566, 2002-2997 (La. 06/27/03), 847 So.2d 1255,cert. denied , 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed. 2d 90 (2004). The appellate court neither assesses the credibility of witnesses nor reweighs evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam , 36,118 (La. App. 2 Cir. 08/30/02), 827 So.2d 508, writ denied , 2002-3090 (La. 11/14/03), 858 So.2d 422.
Generally, evidence of other acts of misconduct is not admissible due to the risk that the defendant will be convicted of the present offense on the basis that the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1) ; State v. Jackson , 625 So.2d 146 (La. 1993). This exclusionary rule stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur , 277 So.2d 126 (La. 1973). However, statutory and jurisprudential exceptions exist when the "evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character." State v. Silguero , 608 So.2d 627 (La. 1992). In that regard, when a defendant is charged with acts that constitute a sex offense involving a victim who was under the age of 17 at the time of the offense, evidence of his other acts which involve sexually assaultive behavior or acts which indicate his lustful disposition toward children is admissible if the court determines that, pursuant to La. C.E. art. 403, its probative value outweighs its prejudicial effect. La. C.E. art. 412.2 ; See State v. Wright , 11-0141 (La. 12/06/11), 79 So.3d 309 ; State v. Williams , 02-0898, 02-1030 (La. 10/15/02), 830 So.2d 984. In determining whether such evidence will be admitted at trial, La. C.E. art. 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."[3]
A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. State v. Wright , supra ; State v. Bell, 50,092 (La. App. 2 Cir. 09/30/15), 179 So.3d 683, writ denied, 2015-1996 (La. 02/10/17), 215 So.3d 701.
At the time the offenses occurred, La. R.S. 14:42 provided in pertinent part:
Aggravated Rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it [is] committed under any one or more of the following circumstances:
* * *
(3) where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.
*1201 At trial, T.N. testified that Robertson first sexually abused her when she was about three years old, while her mother was away. She recalled that Robertson took her and her siblings to the bathroom and made them pull their pants down, and get on their hands and knees. He then molested each of them by inserting his Vaseline-covered fingers into their anuses and vaginas. Robertson told the children that this was his "special cleaning." T.N. testified that Robertson subjected her to this "special cleaning" about once a month for multiple years and always when their mother was gone from the home. According to T.N., she and her siblings were afraid to tell anyone because Robertson had told them that he would beat them with switches until they bled.
T.N. testified that Robertson had sexual intercourse with her on two occasions before she turned 12. She recalled that the first time was in April 1973 when she was 9 years old. Robertson had picked her up early from elementary school because she had gotten in trouble. On the ride home, Robertson told T.N. that she would get a spanking, which scared her because Robertson usually spanked them with a switch or a belt. When they arrived at the house, Robertson sent T.N. to her bedroom. Robertson then entered T.N.'s bedroom carrying a switch and told T.N. to take off her pants and put a towel over her face. T.N. testified that she put a towel over her face as instructed and was lying on the bed when she felt Robertson penetrate her vagina with his penis. T.N. said she knew that Robertson was having intercourse with her because her vagina was hurting and she felt his shirt hitting her sides. She had no doubt that Robertson raped her with his penis.
T.N. testified that when Robertson finished, she told him that she knew what he was doing, that it was "what married people do," and that she was going to tell her mother. Robertson responded that if T.N. said anything, her mother would hate her and her siblings and would leave them and then they "would really get it." T.N. further testified that she started bleeding and that her mother attributed the bleeding to her first menstruation. She was diagnosed with a yeast infection and developed urinary and kidney problems that she associated with the sexual intercourse.
T.N. testified that she was raped the second time by Robertson, behind his shop, when she was about 11 or 12 years old. She later clarified the rape occurred a couple of months before Robertson left to go to Alaska in June of 1975.[4] T.N. testified that Robertson had her take off her pants and bend over a sawhorse at which time he proceeded to rape her. T.N. testified that she watched Robertson penetrate her vagina with his penis. She stated she did not run away from Robertson because she believed he would severely beat her if she resisted. She then described some of the severe beatings she had endured from Robertson at other times. T.N. indicated Robertson beat her with a switch after raping her.
T.N. also testified that she had heard Robertson raping and beating her sister, D.J., in his bedroom about a month after T.N. was first raped by Robertson. T.N. believed D.J. was being raped and beaten because it had just happened to her and she heard her sister screaming, the bed springs squeaking, and Robertson slapping D.J. T.N. said she knew it was D.J. with Robertson because her mother was gone and shortly before she heard the screaming, Robertson had come into the bedroom she shared with D.J. and taken D.J. out of the room.
*1202 D.J. testified that, not only had Robertson subjected her to many "special cleanings" as a child, but that he also raped her about 8 or 9 times during her childhood and recalled that at least two of those times she was under the age of 12. She also remembered an incident when Robertson made her stand in the shed with her pants down and fondled her vaginal area.
D.J. testified that she was about 10 years old when Robertson first raped her. She stated they were alone in the house because her mother was in the hospital and her siblings were staying the night with their grandparents. D.J. was asleep in her bed when Robertson picked her up, carried her into his room and placed her on his bed. D.J. was lying on her stomach, "scared to death," and pretending to be asleep, when she felt Robertson put his penis into her vagina. When it was over, D.J. left her parents' bedroom and testified, "I was scared, but my innocence was completely lost from that moment on. It was robbed from me."
D.J. testified that on several occasions she threatened to tell about the sexual molestations. She said Robertson responded by threatening to kill her and saying things that destroyed her self-worth and self-esteem. D.J. testified that Robertson beat her with switches when she tried to resist his sexual advances. D.J. indicated that Robertson stopped raping her when she was about 14 years old.
T.N. and D.J. both testified that they suffer from mental illness as a result of Robertson's sexual abuse. T.N. testified that she suffers from severe post-traumatic stress disorder, is mentally ill, and has had a series of failed marital relationships due to the sexual abuse she endured from Robertson. T.N. also testified that Robertson even put her in a mental institution for about a year, after her brother passed away.
T.N. and D.J. also testified that, as adults, they maintained contact with Robertson. They admitted to visiting Robertson and his new wife at his home. D.J. also admitted that she had allowed her son to stay with them for two weeks and her six-year-old daughter to stay with them for a couple of days. When asked why she would visit Robertson, T.N. explained that it was because she was raised to believe in honoring your mother and father and she did not know anything else. Furthermore, T.N. believed that Robertson would not sexually assault anyone else because he apologized to her on several occasions and represented that he had gotten help and would never "do that again." Likewise, D.J. testified that she had allowed her children to stay with Robertson because he had apologized to her and told her that he would not hurt anyone again, and she believed him. She also felt comfortable with her leaving her children because her stepmother, Robertson's wife, assured her nothing would happen. T.N and D.J. both testified that they decided to report the sexual molestation to authorities many years later, after they found out Robertson was molesting their niece, R.S.
R.S., who was 15 years old at the time of trial, testified that Robertson is her grandfather and that she has lived most of her life with Robertson and her grandmother, Robertson's wife, and her aunt, in Montgomery, Louisiana. R.S. testified that Robertson had raped her repeatedly over the years. She described the sexual contact as follows:
Q. Did he put his mouth in your private area?
A. Yes, sir.
Q. Did he make you put your mouth on his?
A. Yes, sir.
Q. Did he physically put his penis inside you?
*1203 A. Yes, sir.
Q. And so when you say raped; that's what you mean?
A. Yes, sir.
Q. But that wasn't all he did, correct?
A. No, sir.
According to R.S., Robertson raped her in the house or "pretty much anywhere on the property," and threatened to hit her if she resisted. She testified that when she was about 8 or 9 years old, she realized from things she learned at school that she was being raped by him. She stated the rape usually occurred when her grandmother and aunt were not home. R.S. testified that she kept quiet about the sexual abuse because Robertson told her to "zip it" and throw away the key and that no one would believe her. However, R.S. admitted that she told her best friend, A.S., about the rapes to prevent A.S. from visiting her at home and potentially being molested or raped by Robertson.[5] When R.S. was about 13 years old, her friends reported what was going on to a teacher who subsequently told the school principal.
Robertson did not submit any evidence to contradict any of the testimony. Robertson's counsel attempted to discredit T.N.'s testimony on cross-examination by questioning the fact that she waited almost 40 years to report the sexual abuse and by pointing out that she had visited her father as an adult, even with her children. However, the jury found credible T.N.'s rational explanations for both the delay in reporting the sexual abuse and her visits with Robertson.
Robertson's argument that the conviction could not stand without physical evidence to support the charges is without merit, as is his argument that the state's witnesses lacked credibility. The jury found T.N.'s testimony credible and her testimony alone was sufficient to prove that Robertson committed the crime of aggravated rape. Notwithstanding, the state did not rely on T.N.'s testimony alone. Rather, through the testimony of D.J. and R.S., the state submitted evidence that Robertson had exhibited similar sexually abhorrent acts with other adolescents in his paternal care.
Robertson argues the evidence of "other crimes" is not evidence showing that he raped T.N. However, he does not raise any argument that the trial court erred in allowing the testimony and he did not object to the admissibility of the testimony at trial. A contemporaneous objection is required to preserve an error for appellate review. La. C.E. art. 103(A)(1) ; La. C. Cr. P. art. 841(A).
Moreover, there is no evidence in the record that the trial court abused its discretion in the admission of D.J. and R.S.'s testimonies. Rather, the record reflects the state timely filed a 412.2 notice which adequately informed Robertson of the nature and factual content of D.J. and R.S.'s claims consisting of other sexual assaultive behavior or acts. D.J. and R.S.'s testimonies at trial conform substantially to the details of the offenses as described by the language in the notification. See State v. Baker , 452 So.2d 737 (La. 1984). Furthermore, jurisprudence shows that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes. See e.g., State v. Wright, supra ; United States v. Enjady , 134 F.3d 1427, 1430-1431 (10th Cir. 1998), cert. denied , 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed. 2d 165 (1998) ( Article 412.2 closely follows Fed. R. Evid. 413 ).
*1204 We find the evidence of other sexually assaultive behavior was highly relevant and probative to show that Robertson had a propensity for sexual activity with adolescents under his paternal care, and this evidence could be considered by the jury as proof that Robertson's behavior with T.N. was in conformity with this predisposition. Furthermore, like T.N., D.J. provided rational explanations for her delay in reporting the sexual assaults and for allowing a rational explanation for allowing her children to stay with him and his new wife, years after the assaults. Consequently, a review of the record as a whole and the egregiousness of its facts, demonstrate the jury's determination was reasonable and that a rational trier of fact could have found the evidence was sufficient under the Jackson standard to support Robertson's conviction.
ERROR PATENT
Our error patent review of the record revealed the trial court failed to sentence Robertson in accordance with the penalty range in effect at the time he committed the rapes. The law in effect at the time of the commission of the offense is determinative of the penalty that the Robertson must suffer. State v. Sugasti , 01-3407 (La. 06/21/02), 820 So.2d 518, citing State v. Wright, supra ; State v. Modisette , 50,846 (La. App. 2 Cir. 09/28/16), 207 So.3d 1108.
The penalty in effect for aggravated rape at the time Robertson committed the crimes in April of 1973 and June of 1975 was death. See La. R.S. 14:42 (1950). In 1976, Louisiana's mandatory death sentence for aggravated rape was struck down as unconstitutional by the United States Supreme Court in Selman v. Louisiana , 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed. 2d 1212 (1976). The Louisiana Supreme Court responded by requiring that aggravated rape convicts previously sentenced to death be resentenced to the most serious penalty for the next lesser included offense; e.g. attempted aggravated rape. State v. Valentine , 364 So.2d 595, 596-97 (La. 1978) ; State v. Bryant , 347 So.2d 227, 228 (La. 1977) ; State v. Sledge , 340 So.2d 205 (La. 1976) ; State v. Craig, 340 So.2d 191 (La. 1976) ; State v.Lee , 340 So.2d 180 (La. 1976).[6] Consequently, the sentence to be imposed at the time of both crimes in this case is the mandatory maximum for attempted aggravated rape, which is 20 years at hard labor without any restriction on parole, probation, or suspension of sentence. See La. R.S. 14:27, Act. No. 471; Craig, supra at 192.[7]
Considering the repulsiveness of Robertson's crimes, we must note that, effective *1205 September 12, 1975, La. R.S. 14:27(D)(1) was amended to change the mandatory maximum for attempted aggravated rape from 20 years to 50 years at hard labor without any restriction on parole, probation, or suspension of sentence. Therefore, if there had been evidence that either of the rapes took place on or after September 12, 1975, the appropriate penalty would have been 50 years at hard labor without any restriction on parole, probation, or suspension of sentence. However, since there is no evidence that the rapes took place on or after September 12, 1975, the trial court was constrained to sentencing Robertson to the mandatory 20 years at hard labor.
Pursuant to the authority set out in La. C. Cr. P. art. 882, this Court vacates the trial court's sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence and resentences Robertson to 20 years at hard labor without any restriction on parole, probation, or suspension of sentence. State v. Williams , 00-1725 (La. 11/28/01), 800 So.2d 790. The trial court minutes should be amended to reflect this adjustment of Robertson's sentence.
CONCLUSION
For the foregoing reasons, Robertson's conviction is affirmed. Robertson's sentence is vacated and he is resentenced to 20 years at hard labor with no restriction on parole, probation, or suspension of sentence. As amended, his sentence is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

In accordance with La. R.S. 46:1844(W), the victims will be identified by their initials only.

As of August 1, 2015, the crime of aggravated rape was changed to first degree rape. See La. 14:42.

While not raised by Robertson, La. C.E. art. 412.2 does not require a hearing prior to the admission of evidence under the article. See State v. Williams , supra at 987.

T.N. turned 11 years old on February 12, 1975.

The state also called A.S., who was 16 years old during trial. A.S. testified that she has been friends with R.S. since the fourth grade and that when they were in sixth or seventh grade, R.S. told her that her grandfather raped her.

This mandate governed sentencing until the new aggravated rape statute took effect on September 9, 1977, which replaced the death penalty for aggravated rape with a life sentence at hard labor, without benefit of parole, probation, or suspension of sentence. La. Acts 1977, No. 343.

At the time Robertson committed the April 1973 rape, pursuant to La. C. Cr. P. art. 814 (1967), the jury was authorized to return a verdict of "guilty without capital punishment," which resulted in a sentence of life imprisonment. However, Article 814 was subsequently amended to remove jury discretion to impose any penalty but death for a capital offense, including aggravated rape. Statutory amendments to responsive verdicts are procedural, and the list of responsive verdicts in effect at the time of trial, not the time of offense, should be used. State v. Martin , 351 So.2d (La. 1977); State v. Garner , 39,731 (La. App. 2 Cir. 11/17/05), 913 So.2d 874, writ denied , 05-2567 (La. 05/26/06), 930 So.2d 19. See e.g. , State v. Fraise , 350 So.2d 154 (La. 1977), (defendant, who was convicted in 1975 for an aggravated rape that occurred in 1971, was re-sentenced from death to "the most serious penalty for a lesser-included offense at the time of the commission of the crime," attempted aggravated rape).