Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,661-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TOREY KIRBY                                 Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 354,935

Honorable Charles Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

WILLIAM C. GASKINS
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before MOORE, THOMPSON, and BODDIE (*Pro Tempore*), JJ.

**MOORE, C.J.**

Following a jury trial, the defendant, Torey Kirby, was convicted as charged of attempted third degree rape, simple burglary of an inhabited dwelling, and unauthorized entry of an inhabited dwelling.  Prior to sentencing, Kirby was determined to be a second-felony offender.  The court sentenced Kirby to concurrent sentences of 10 years at hard labor without benefit of probation or suspension of sentence for each conviction.

Kirby now appeals the convictions for attempted third degree rape and simple burglary.  For the following reasons, we affirm the convictions and sentences.

## FACTS

On January 8, 2018, after working a 12-hour graveyard shift as a nurse at Willis-Knighton Medical Center, the victim, K.F., returned to her home in the Broadmoor neighborhood shortly after 7:00 a.m.  The house is located directly behind a Thrifty Liquor store.  Once she was home, K.F. took her dog outside to do his business, and then brought him back inside; she forgot to lock the door behind her as she headed to the bedroom. Exhausted, she disrobed and went to bed.

Later that morning – just minutes before noon – she was awakened by the sound of her dog growling and backing up against her.  She noticed the stench of cigarette smoke.  When she opened her eyes, she saw a black male standing at the foot of her bed holding a bottle of Absolut Vanilla Vodka in one hand and a cigarette in the other.  The vodka came from her kitchen cabinet.

The intruder said something to her that she did not understand as her dog lunged off the bed toward the defendant.  She screamed at him

repeatedly to get out, and he retreated down the hallway with the dog on his heels.  K.F. immediately called 911, and she heard the back door open.  She thought that perhaps the intruder had left; unfortunately, he only stepped outside the door onto the patio while the dog ran outside and left the property.[1]

While remaining on the phone with 911, K.F. put on her bathrobe and cautiously walked down the hallway, which opens into the dining room with the kitchen to the left.  She walked into the kitchen toward the open side door leading outside to the patio.  She saw the defendant standing just outside the threshold of the door.  When he saw her, he came back into the doorway from the patio.  She testified that he sat down in the threshold of the door and continued to swig the bottle of vodka he took from her kitchen.

K.F. said the defendant turned up the bottle, took a large drink, and then stated that "he was going to f--- my fine ass."  K.F. was still connected to 911, and the call was being recorded.  She responded: "So you are going to f--- my fine ass?"  She began repeatedly yelling at him to get out.

The defendant stood up inside the kitchen doorway licking his lips and moving his mouth provocatively.  She testified that he said, "Dam[n], Bitch, I'm going to f--- you."  The defendant moved toward her, telling her he was going to show her something.  He struggled to get his pants down while trying to expose himself, but was not completely successful during the several attempts.  K.F. testified that he exposed his pubic area including the base and part of the shaft of his penis several times.

---

[1] K.F. explained at trial that the dog must have mistaken her screams of "Get out!" as directed at him, not the intruder.  The dog was subsequently found several blocks away from her home.

K.F. grabbed a butcher knife and told the defendant that she would stab him. She can be heard on the 911 recording audio telling the defendant, "No. Stop." She ran through the house and then out the front door just as the police arrived. The recording of the 911 tape was admitted into evidence and played to the jury.

Kirby was arrested by Shreveport Police Department ("SPD") Officer Jordon Lewis. Officer Lewis testified that he found Kirby sitting in the threshold of the side door of K.F's house drinking an alcoholic beverage and ignoring commands. He said that Kirby appeared to be intoxicated.

After the arrest, Ofc. Lewis placed Kirby in the backseat of his patrol car, which was equipped with video surveillance equipment. At trial, the state played to the jury a video recording ("MVS video") of the defendant's behavior in the vehicle after his arrest. Officer Lewis identified the video and the defendant therein. When questioned regarding the defendant's level of intoxication, he testified that the defendant was able to stand, walk, talk coherently in complete sentences, and remain conscious during his interactions with him. He testified that Kirby did not fall asleep at any time and understood that he was being arrested.

Finally, Detective Bryan Lauzon of the SPD testified regarding his investigation of the case. He did not interview Kirby until January 9, 2018, the day after the incident, because he was told that Kirby might be intoxicated, but interviewed him at the Shreveport City Jail shortly after 2:00 p.m. on that day. The interview was recorded and played to the jury with certain parts excised by agreement between the state and the defense.

During the interview, Kirby admitted entering the side door of K.F.'s residence, walking around the house and finding K.F. and the dog in the

bedroom, and taking the bottle of vodka. He claimed he had no intent to harm or hurt K.F., and he denied making any sexual statements or advances toward her.

The jury returned guilty verdicts on all three counts. After the defendant was sentenced, this appeal followed.

## DISCUSSION

By his first assignment of error, Kirby contends that the state failed to prove beyond a reasonable doubt that he had specific intent to commit attempted third degree rape. He maintains that because he was intoxicated, he lacked the specific intent to commit third degree rape. He also argues that his conduct and demeanor before and after he made the sexual statements to K.F. and attempted to remove his pants do not prove beyond a reasonable doubt that he had specific intent to commit third degree rape. Accordingly, he argues that the conviction should be reversed and the sentence vacated.

This assignment raises a sufficiency of the evidence question of whether the evidence regarding the element of "specific intent" was sufficient for the jury to find that the defendant was guilty of attempted third degree rape beyond a reasonable doubt. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. La. C. Cr. P. art. 821; *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Young*, 51,711 (La. App. 2 Cir. 1/18/18), 245 So. 3d 353, *writ denied*, 18-

4

0309 (La. 11/14/18), 256 So. 3d 283. The *Jackson* standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Young*, *supra*; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/06/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Young*, *supra*; *State v. Demery*, 49,732 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1175, *writ denied*, 15-1072 (La. 10/17/16), 207 So. 3d 1067. A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000); *State v. Young*, *supra*; *State v. Demery*, *supra*.

Third degree rape is defined by La. R.S. 14:43(A)(4):

Third degree rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed when the offender acts without the consent of the victim.

Attempt is defined by La. R.S. 14:27(A):

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

"Specific intent" is therefore a required element for a conviction of attempt to commit the offense intended, in this case, third degree rape. Specific intent is defined by La. R.S. 14:10(1), which states:

5

Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

Under some circumstances, intoxication may provide a defense to the prosecution of a crime when the intoxication precludes the presence of specific intent to commit the criminal offense. According to La. R.S. 14:15(2), "the fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial" "except where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime."

The state maintains that the evidence proved beyond a reasonable doubt that Kirby had specific intent to commit third degree rape: Kirby told K.F. he was going to f--- her at least twice; he acted in a sexually provocative manner trying to expose himself, and he moved toward her despite K.F.'s protests which could be heard on the 911 call. K.F. testified that she did not know that defendant was intoxicated. His speech was clear, and he was coherent at the time. Additionally, after his arrest, Kirby was placed in a police unit where his behavior was recorded. In the video, he talked about having sex with a woman or women; his speech was clear, and he did not fall asleep or lose consciousness in the police unit. The state maintains that a jury could infer from the facts and circumstances of this case that defendant had the specific intent to commit third degree rape.

The defendant did not testify at trial. However, Det. Lauzon testified regarding his recorded interview with defendant. A copy of that recording was admitted and played in open court subject to redaction as noted above.

6

In the recording, Det. Lauzon advised Kirby of his *Miranda* rights, and Kirby confirmed he understood. Kirby stated that he had problems with drugs and alcohol, and he had been residing at a halfway house but had been kicked out shortly before this incident for urinating in a closet. On January 8, 2018, he said he had been drinking heavily prior to the incident in question and was intoxicated. He found an open door at 3471 Broadmoor, and he entered the house through the kitchen. He described going into the house, finding a woman asleep on the bed with her dog, and startling both. He stated that he was trying to get out of the cold, and did not expect to find anyone in the house. He admitted he took some liquor from the house and started drinking.

Defendant stated that he did not know K.F., but he stayed at the house after K.F. called the police because he wanted to explain his actions to the police and not make it worse for himself. He admitted he was still drinking the liquor when the police arrived. He stated that he had no ill intentions toward K.F. He confirmed that he went outside the house and then returned inside the house, but denied saying he would "f--- your fine ass" to K.F. He also stated that he did not expose himself to K.F. or touch her, and maintained that K.F. was lying.

As noted, the MVS recording from Ofc. Lewis's patrol car was played for the jury. Kirby can be seen on the video rambling, smiling, and laughing, and he appears heavily intoxicated, making numerous incoherent statements. He makes several comments of a sexual nature about a woman or different women, and stated that he did not mean to have sex with a "pastor's wife."

In regard to the element of specific intent, we specifically note the testimony from Det. Lauzon who was asked at trial what Kirby said regarding his intoxication while in K.F.'s house:

> He would say different things. You know, like you heard[2] at one point, he said that he had been drinking. When he saw the victim, it's like the alcohol vanished. At one point, he said that he remembers everything very clearly. . . .
>
> But from him talking to me, it was clear that if he was intoxicated . . . that it was not to the level where he did not remember what happened. He knew very specific details, what kind of vehicle as far as the color, that it was an SUV, that it was in the driveway, the layout of the house. The door that he entered, he remembered the fact that it was unlocked. He remembered where she was, where the dog was. You know, she – he remembered all the details of the incident.

However, when it came to the matters involving his alleged sexual threats, he denied either making these or having any memory of them. Det. Lauzon testified:

> [O]ne of the times, he said that he's not saying that she's lying, just as his roommate at the residence that he was staying at, wasn't lying about the urinating-in-the-closet incident. And so, he's not saying that they're lying, but he's not lying as well. And so, in essence, he just doesn't remember what had happened.
>
> * * *
>
> He was worried about having a sex charge. He said, you know, at one point, that he remembers everything clearly. And when I talked to him about anything to do with the sexual nature, as far as saying – and I quote, "I'm going to fuck the shit out of you," just as we watched him say in the back of the patrol unit.
>
> You know he would come up with various ways of denial. But at different points, him also saying that he may have said it, but he was drunk, and he was sorry. But when it came to exposing his penis, one of two denials, one he just didn't do it or, two, he didn't remember doing it, he did not want to catch a sex charge.

---

[2] On the recorded interview.

After review under the *Jackson* standard, viewing the evidence in a light most favorable to the prosecution, we conclude that the jury reasonably could have concluded that the defendant's intoxication did not preclude the presence of specific intent to commit third degree rape and all the elements of the crime were proven beyond a reasonable doubt. The defendant expressly stated that he was going to "f--- her fine ass," and he stood up from the threshold of K.F.'s kitchen and walked toward her attempting to pull his pants down despite her repeatedly screaming at him to get out of her house. He exposed his genitals to her several times. The 911 audio recording confirms K.F.'s testimony. Furthermore, in defendant's statements to law enforcement he says emphatically that he did not attempt to commit sexual assault upon K.F.; however, his memory of the incident appears to be selective; he remembers in great detail his conduct in K.F.'s home, but claims he does not remember any of the sexually assaultive behavior.

In sum, the evidence at trial shows that Kirby unlawfully entered the unlocked but occupied house, perhaps looking for alcohol or something of value to take, or perhaps even to get out of the cold. Once inside he began looking around the house, stole a bottle of vodka, and then came upon K.F. sleeping naked in her bed. She was awakened by her growling dog and immediately screamed at him to get out. He retreated out of the bedroom to the patio, but the dog also left the house and yard. It was then that he formulated his intent to re-enter the house to rape K.F., and he expressed his intent to her when he re-entered the kitchen. During this time, Kirby was turning up the bottle of vodka he took from the victim's kitchen. While he does appear to be intoxicated in the MVS recording in which he made

9

comments regarding sex with a woman or women, the jury could reasonably have concluded that his level of intoxication earlier when the incident occurred did not preclude the presence of specific criminal intent to commit third degree rape.

This assignment of error is without merit, and defendant's conviction and sentence for attempted third degree rape is affirmed.

By his second assignment of error, the defendant argues that the state failed to prove he committed both an unauthorized entry and a simple burglary of K.F.'s home. Specifically, he argues the state failed to prove beyond a reasonable doubt that he committed simple burglary of an inhabited dwelling. The evidence presented at trial established only that he exited through the same threshold of K.F.'s home that he "entered" during the unauthorized entry, and, after staying on the patio for only 30 seconds to one minute, he crossed back through the same threshold he "entered" during the unauthorized entry. Defendant argues that "entering" through that door twice is insufficient to find that he committed a second entry, which is required to support a second conviction for simple burglary of an inhabited dwelling. Defendant maintains that his conviction for simple burglary of an inhabited dwelling should be reversed and his sentence vacated.

Simple Burglary is defined by La. R.S. 14:62.2(A):

Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.

Unauthorized Entry of an Inhabited Dwelling is defined by La. R.S. 14:62.3:

Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.

In order to convict an accused of simple burglary of an inhabited dwelling, the state must prove: (1) there was an unauthorized entry, (2) the structure was inhabited at the time of entry, and (3) the defendant had the specific intent to commit a felony or theft inside the structure. In order to satisfy the unauthorized entry element, the state must prove that the defendant did not have permission to enter the premises. *State v. Schnyder*, 06-29 (La. App. 5 Cir. 6/28/06), 937 So. 2d 396. A defendant's intent to commit burglary of an inhabited dwelling may be inferred from circumstances surrounding the commission of the offense. *State v. Mitchell*, 50,188 (La. App. 2 Cir. 11/18/15), 181 So. 3d 800, *writ denied*, 15-2356 (La. 1/9/17), 214 So. 3d 863.

Entry is accomplished whenever any part of the defendant's person passes the line of the threshold. It is sufficient that any part of the person intrudes even momentarily, into the structure. *State in Interest of R.E.B.*, 26,468 (La. App. 2 Cir. 9/21/94), 643 So. 2d 287.

Defendant here contends that he did not make two separate entries into K.F.'s home sufficient to support convictions for both unauthorized entry of an inhabited dwelling and simple burglary of an inhabited dwelling where the two alleged crimes were separated by only 30 seconds to 1 minute and involved "entry" through the same threshold.[3] To support his argument

---

[3] If there is but one unauthorized entry of an inhabited dwelling, double jeopardy would prohibit two convictions for that same act, i.e. a conviction for unauthorized entry of an inhabited dwelling and one for burglary based on the same unauthorized entry, under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

11

that there was but one unauthorized entry into the inhabited dwelling, he cites case law that found that structures attached or unattached to the home have been held to be part of the "inhabited dwelling" for purposes of the "unauthorized entry" element.[4]  He further argues that since there was no (specific) intent to commit the felony of rape, there was no burglary.

Our review of the evidence shows that Kirby made an unauthorized entry into the victim's home, searched the kitchen and took a bottle of vodka from K.F.'s kitchen, and began consuming it immediately.  At this point in the incident, there were sufficient facts for a jury to find that a simple burglary had been committed because the statute requires merely unauthorized entry with intent to commit a felony or "any theft therein."  However, the facts of the case also support the charged conviction of simple burglary based on the intent to commit the rape.

After taking the bottle of vodka from the kitchen, the defendant wandered into the bedroom and discovered the victim lying naked in her bed.  The victim awoke and demanded that he "get out" and her dog attacked him, thereby forcing Kirby to retreat outside of the house onto the patio.  Had the dog persisted in defending the house and his owner, Kirby may have left the property altogether and there would have been no evidence of intent to commit a rape.  Instead, the dog ran off.  No longer under the threat of

---

[4] The cases cited by the defendant involved defining where the threshold of the inhabited dwelling existed and not the issue of multiple entries into the same dwelling. *See e.g.*, *State v. Bryant*, 34,244 (La. App. 2 Cir.12/6/00), 775 So. 2d 596, *writ denied*, 01-144 (La. 11/21/01), 802 So. 2d 627, the defendant broke into a storeroom in a carport of a house; the storeroom was held to be part of the inhabited dwelling; *State v. Ennis*, 11-0976 (La. App. 4 Cir. 7/5/12), 97 So. 3d 575, *writ denied*, 12-1799 (La. 3/1/13), 108 So. 3d 788, the defendant was guilty of attempted unauthorized entry of an inhabited dwelling where he attempted to break a window of a shed located in the victim's yard; *State v. Martin*, 07-0791 (La. App. 4 Cir. 10/17/07), 970 So. 2d 9, a screen porch was found to be part of the inhabited dwelling even where there was no evidence the porch was under the main roof line of the rest of the house; the porch had doors leading into the house and the owner considered the porch to be part of the house.

being attacked by the dog, Kirby then formulated his intent to re-enter the house for the purpose of forcing sex with the victim. He re-entered and told the victim what he intended to do; furthermore, he took steps toward accomplishing that end.

Even if we were to find that the patio was a part of the inhabited dwelling, which we do not,[5] the pivotal issue in our view is not whether the patio could be considered a part of the inhabited dwelling for purposes of finding that the defendant's retreat was part of the original entry into the inhabited dwelling, but whether he committed two distinct criminal acts of unauthorized entry, each for different purposes that constitute separate crimes. In the cases cited by the defense, the defendants were charged with attempted burglary or unlawful entry for breaking into an outbuilding or attached carport outside of the house in which the target of the burglaries were items in the outbuilding, porch or garage. By contrast, in our case the unauthorized entry was entry into the house, not an outbuilding or carport. While a patio may or may not be considered part of an inhabited dwelling, entry through a door or across the threshold of a home on two separate occasions (no matter how close in time) for two different purposes clearly constitutes two distinct criminal acts.

Furthermore, there was no testimony to suggest that the patio of K.F.'s home was a part of the structure of her home. Those cases where courts have found an unattached shed, rooms attached to carports, and a screened-in porch to be a part of an inhabited dwelling were offenses in which the target of the unlawful entry was the shed, carport or screened-in

---

[5] The record does not show that there was any structure enclosing or covering the patio area outside the kitchen, which distinguishes this case from those cited by the defense.

porch. Here, Kirby fled the house to the safety of the patio, realized the dog was no longer a threat and, with the unprotected woman inside, decided to re-enter the home to commit a felony. He did not have consent to enter K.F.'s home for either of the two entries he made, each with different criminal intent. Accordingly, we conclude that the evidence is sufficient for a reasonable jury to find that Kirby committed both an unauthorized entry of an inhabited dwelling and simple burglary of an inhabited dwelling. This assignment of error is without merit, and defendant's convictions and sentences for unauthorized entry of an inhabited dwelling and simple burglary of an inhabited dwelling are affirmed.

## ERROR PATENT

Our error patent review shows a discrepancy in the record between the sentencing transcript and the minutes for defendant's sentencing. According to the transcript, the court ordered the sentences to be served without probation or suspension of sentence. On the other hand, the minutes state that the sentence for Count One, attempted third degree rape, is to be served without probation, *parole,* or suspension of sentence.

For this reason, we direct the trial court to amend the minutes of the sentencing proceeding to accurately reflect the sentencing transcript. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081; *State v. Lynch*, 441 So. 2d 732 (La. 1983); *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79.

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of the defendant.

**AFFIRMED.**

14